[No. 20646.   Department Two. — August 4, 1890.]

85   231
119  594

## THE PEOPLE, RESPONDENT, v. HORACE C. ADAMS, APPELLANT.

CRIMINAL LAW — HOMICIDE — ARREST OF DECEASED BY CONSTABLE — FAIL-
URE TO DISARM DECEASED — KNOWLEDGE OF DEFENDANT — INFERENCE
OF GUILT — INSTRUCTION. — Upon the trial of a constable charged with
murder, where there was a conflict of evidence as to whether the defend-
ant knew that the deceased, who had been fighting and quarreling, had
been disarmed before the defendant tried to arrest him, the jury is en-
titled to consider the failure of the constable to search him when he had
the right and opportunity to do so, as bearing upon the probability of
his statement that he had not been informed that the pistol of the de-
ceased had been taken away; and an instruction to the jury as to the
right of a person making an arrest to disarm the person arrested does not,
in such case, imply that an inference of guilt must be drawn from the
neglect of the constable to search the deceased.

ID. — EVIDENCE — REASONABLE DOUBT — MATTER OF DEFENSE — INSTRUC-
TION. — An instruction to the jury that if certain facts are proved be-
yond a reasonable doubt, including the fact that the defendant at the
time of the homicide was constable, and in the exercise of his official
duty, they should find the defendant guilty, is not erroneous as imply-
ing an instruction to the jury that such fact, as a matter of defense, must
be proved beyond a reasonable doubt.

ID. — SELF-DEFENSE — FEAR OF BEING KILLED — INSTRUCTION. — Where the
defendant, accused of murder, confines his justification to self-defense,
through fear of being killed, the fact that instructions laying down the
law of self-defense contain the expression that the defendant " must
have acted under the influence of such fears alone " disclose no error, if
the collocation of the instructions is such that the jury could not fail
to apply the expression exclusively to the plea of self-defense.

ID. — JUSTIFIABLE HOMICIDE — ARREST FOR FELONY. — A homicide is justi-
fiable when necessarily committed in a lawful attempt to arrest a person
who has committed a felony.

ID. — RIGHTS OF OFFICER MAKING ARREST — APPARENT NECESSITY FOR
HOMICIDE. — An officer in making an arrest has the right to use all the
force which, from the surrounding circumstances, seems to him, as a
reasonable man, necessary, and has a right to arm himself and go armed;
and where the offense charged is a felony, if apparently necessary to a
reasonable man, it is his right to kill the person whom he is seeking to
arrest, and it is his duty, with or without a warrant, to arrest a man
who has committed a felony.

ID. — REASONABLE BELIEF OF NECESSITY — INSTRUCTION. — The defendant's
belief that deceased was armed would not justify him in acting upon
such assumption, unless the circumstances were such as reasonably to
warrant the belief; and the refusal of the court to instruct the jury that
it was immaterial whether deceased was armed or not, if defendant be-
lieved he was armed, is not error.

ID. — EVIDENCE — QUARREL OF DECEASED WITH ANOTHER — COMMISSION OF
FELONY — ARREST WITHOUT WARRANT. — Evidence as to a quarrel and
fight between the deceased and another man is admissible as bearing
upon the question whether or not deceased had committed a felony, and
whether defendant had a right to arrest him without a warrant, and to
kill him if necessary to effect his arrest.

ID. — MAKING UP QUARREL — DUTY OF OFFICER TO ARREST — PREJUDICIAL
ERROR. — Where it appears that the deceased had committed a felony,
for which he was arrested without a warrant by defendant, evidence
that the deceased and the man with whom he quarreled had made up
their quarrel and become reconciled before the defendant attempted to
make the arrest was immaterial, and its admission was prejudicial, as
tending to show that no arrest was necessary.

ID. — COMMISSION OF FELONY — REFUSAL OF INSTRUCTION WARRANTED BY
EVIDENCE. — Where the testimony of certain witnesses showed that the
deceased had undoubtedly committed a felony, a refusal to instruct the
jury that if the testimony of such witnesses was true, the deceased had
committed a felony, is a vital error, it appearing that the defense rested
upon a justification of necessary killing in the performance of his duty
to arrest the deceased for felony.

INSTRUCTIONS ALREADY GIVEN. — It is not error to refuse correct instruc-
tions which have been already given in substance in other instructions.

APPEAL from a judgment of the Superior Court of San
Bernardino County.

The facts are stated in the opinion of the court.

*Hargrave & Bledsoe*, and *Harris & Gregg*, for Appellant.

*Attorney-General Johnson*, for Respondent.

BEATTY, C. J. — The defendant was charged with
murder and convicted of manslaughter. In support of
his appeal, he assigns error upon various rulings of the
court in the admission of testimony, and in the giving
and refusing of instructions to the jury.

To a proper understanding of these exceptions a brief
statement of the case is necessary.

The defendant at the date of the homicide was a con-
stable. The deceased, John Collins, and one Clarke had
been engaged in a quarrel and fight, in which Collins
was worsted. Collins left the saloon where the fight
occurred, went to his home, armed himself with a pistol,

and, returning to the saloon, approached Clarke from behind·and fired one shot at him. The shot failed to take effect, owing to the interference of one Boyle, who struck the pistol aside at the moment of firing, and who immediately disarmed Collins.

The defendant testified that his attention was attracted by the noise in the saloon; that he saw Collins go to his house, and return to the saloon with his pistol, and that he heard the shot; that he took his own pistol and hurried to the saloon, under the impression that Collins had shot some one, and for the purpose of arresting him. In the saloon he found Clarke, Collins, and others, who, after some talk, took a drink together, whereupon Collins started to leave. Defendant followed him outside, took hold of him, and told him he was his prisoner.

There is a conflict of evidence as to what ensued. According to the testimony of the prosecution, the defendant shot Collins without excuse or provocation. But the defendant introduced evidence which, if true, showed that Collins was a quarrelsome and dangerous man when drinking; that he had been drinking on this occasion; that on previous occasions he, defendant, had been compelled to threaten Collins with arrest for disturbing the peace; that Collins had declared he never should arrest him alive, and had made other threats which had been communicated to defendant. And the defendant testified that he did not know that Collins had been disarmed, but believed that he still had the pistol with which he had just assaulted Clarke, and would use it if he had the opportunity. To quote his own words: "His right hand, when I shot, was in a position where he could have drawn his pistol. I thought, at the time of firing, that if I did not kill Collins or disable him he would kill me. I had no grudge against him."

According to the testimony for the defense, the manner, bearing, and words of Collins, at the time defendant attempted to arrest him, were defiant and threatening,

and he was resisting the attempt to arrest him. According to the testimony for the prosecution, defendant did not distinctly inform Collins of his intention to arrest him, and Collins neither resisted arrest nor threatened violence to defendant.

This being the case, it is claimed that the court erred in instructing the jury that "any person making an arrest may take from the person arrested all offensive weapons which he may have about his person."

The argument in support of this assignment of error is, that it must have produced the impression upon the minds of the jury that the failure of defendant to search Collins for arms was a neglect of duty, and that an inference of guilt must be drawn therefrom.

We do not think that it could have been so understood, and we can see that the right of defendant to search and disarm the deceased when he first encountered him in the saloon had its bearing upon a very material question in the case. There was a conflict of evidence as to whether defendant knew that Collins had been disarmed, and the jury were entitled to consider the failure to search him when defendant had the right and opportunity to do so, as bearing upon the probability of his statement that he had not been informed that Collins's pistol had been taken away.

It is next claimed that the court erred in giving the instruction numbered 12.

In this instruction the jury are told that if certain things are proved beyond a reasonable doubt they should find the defendant guilty. Among other facts enumerated in the instruction is this: That the defendant, at the time of the homicide, was constable, and in the exercise of his official duty.

It is contended that this fact was matter of defense, and that the court virtually instructed the jury that it must be proved beyond a reasonable doubt.

But certainly the instruction does not say so, nor does

it necessarily imply it.  It tells the jury that if this and
other facts are proved beyond a reasonable doubt, they
should find the defendant guilty; but it neither says nor
of necessity implies that he must be found guilty if this
fact is not proved by that degree of evidence.  Nor do
we think that the jury could have understood that, as a
matter of defense, it must be so proved.

There was no error in the instructions of the court
laying down the law of self-defense.  The whole theory
of the defense was, that the killing was necessary, not for
the purpose of making the arrest, but to prevent Collins
from killing the defendant.  The defendant himself
confines his justification to that ground.  And even if
he had also made a serious claim that the killing was
necessary in order to effect the arrest, it would have been
proper and necessary to give the law of self-defense com-
plete, and in doing so, to use the expression complained
of, viz., that the defendant " must have acted under the
influence of such fears alone," confining its application,
of course, to this ground of defense.  And we think the
collocation of the instructions in this case was such, es-
pecially in view of the defendant's testimony, that the
jury could not have failed to apply the expression com-
plained of exclusively to the plea of self-defense.

It is true, the court refused to give one instruction
asked by defendant, to the effect that a homicide is
justifiable when necessarily committed in a lawful attempt
to arrest a person who has committed a felony, and this
might have prejudiced the defendant but for the fact
that another instruction, also drawn by his counsel, in
slightly different terms, but in substance the same, had
already been given.  The instruction so given was in
the following terms, and we think covers the whole
ground:—

" The court charges the jury that an officer in making
an arrest has the right to use all the force which, from
the surrounding circumstances, seems to him, as a rea-

sonable man, necessary; that he has a right to arm himself and to go armed; and where the offense charged is a felony, he has a right, if apparently necessary to a reasonable man, to kill the person whom he is seeking to arrest; and he has a right, and it is his duty, to arrest a man who has committed a felony, with or without a warrant."

The court did not err in refusing to instruct the jury that it was immaterial whether Collins was armed or not, if defendant himself believed he was armed. The defendant's belief that Collins was armed would not justify him in acting upon such assumption, unless the circumstances were such as reasonably to warrant the belief. With this necessary qualification, the instruction was substantially included in the charge of the court. Nor did the court err in admitting evidence as to the quarrel and fight between Clarke and Collins. This had a necessary bearing upon the question whether Collins had committed a felony, and whether defendant had a right to arrest him without a warrant, and to kill him if necessary to effect his arrest. The effect of the testimony could only have been favorable to the defendant.

The testimony of the justice of the peace that he had issued no warrant for the arrest of Collins was perhaps immaterial, but its admission cannot have been at all prejudicial to the defendant.

But the testimony which was admitted over the objection of defendant, for the purpose of showing that Collins and Clarke had made up their quarrel and became reconciled before defendant attempted to make the arrest was immaterial; and since the only use that could be made of it was to argue that no arrest was necessary, it must have been prejudicial.

If Collins had committed a felony, it was the duty of the defendant to arrest him, no matter how complete the reconciliation between him and the man he had assaulted. It was a vital point to the defense to show

that the defendant was doing his duty at the time of the homicide, and any incompetent evidence submitted to the jury for the purpose of showing that he was transcending his duty or exceeding his rights as an officer was prejudicial error.

In this instance the error might perhaps have been cured if the court had given the instruction asked by the defendant to the effect that it is the duty of an officer to arrest a person who has committed a felony, even though the parties concerned may have attempted to settle it. But this instruction was refused.

It was also error to refuse the instruction that if the testimony of Boyle and Clarke was true, Collins had committed a felony.

According to their testimony, he had undoubtedly committed felony, and if so, it was the undoubted duty of defendant to arrest him, and to use sufficient force for that purpose. This, as we have said, was a vital point in the defense, and the defendant was entitled to have the law affecting it given to the jury.

For the error of the court in refusing these instructions, the judgment must be reversed, and the cause remanded for a new trial.

It is accordingly so ordered.

McFarland, J., and Sharpstein, J., concurred.